IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

**CAROLYN SECKMAN,**
**CHARLES and GAIL ANDERSON, and**
**WILLIAM C. and KIMBERLY VANCAMPEN,**
individually and on behalf of a putative class,

    Plaintiffs,

v.

**ANTERO RESOURCES CORPORATION,**
a Delaware corporation,

    Defendant.

No. **5:23-CV-136 (Bailey)**

ELECTRONICALLY FILED
Apr 10 2023
U.S. DISTRICT COURT
Northern District of WV

## CLASS ACTION COMPLAINT

### Introduction

1. "Well bashing" is a preventable phenomenon, caused by natural gas operators' shoddy drilling and completion practices and engineering, that is widely known in the natural gas industry to "cause billions of dollars in production underperformance each year." *The ResFrac Parent/Child Industry Study Has Kicked Off!*, https://www.resfrac.com/blog/resfrac-parentchild-industry-study-has-kicked (last visited June 13, 2022).

2. Well bashing occurs when a newer "child well" is completed near an older "parent well" that is already producing natural gas. In the scenario at hand, both wells are horizontally drilled and "fracked"— that is, a mixture consisting of water, chemicals, and usually sand, is injected at high pressure into the geological substrata to force open existing fractures, create new ones, and extract oil and gas from a shale formation. The "bashing" damage to the parent well occurs because delayed drilling or completion and eventual operation of the child well lowers the overall pressure of the parent, or clogs the parent with the fracking fluids and sand, and can

potentially cause permanent damage and lower the overall amount recovered from a reservoir. The drilling and development method most likely to prevent this waste of the natural resources is referred to as "combo development." Combo development involves the timely drilling completion and operation of all wells on each pad within a unit without excessive delay between the drilling completion and operation of each well.

3. Gas developers, including Antero, avoid combo development for reasons ranging from poor development planning to simple greed. For example, operators looking to attract corporate investment dollars and hit executive bonus goals are incentivized to establish "proven undeveloped reserves," or "PUDs," to beef up the value and projections of their operations on paper.

4. A PUD is established when the developer drills a single parent well in a unit. A second PUD is established when the developer drills a single parent well in another unit, and so on. Large developers like Antero typically hold leases on dozens of units and, to beef up PUDs and attract more investment dollars, drill single wells in each of their units. Additional wells—child wells—come later, even though the developer knows the untimely drilling and completion of a child well can and, in some cases, does sharply reduce the production of the parent well. While these practices serve the interests of the developer in attracting investment and hitting internal production goals, they harm the interests of parent-well royalty owners like the Plaintiffs.

5. Further, developing wells without regard to sound sequencing and spacing allows operators to avoid having to pay lessors to extend leases, the terms of which require renewal payments if the operators have not commenced drilling on the leased property within a specified timeframe. Essentially, if a property has not been developed but has a lease that is soon to expire, the developer can drill a well within the unit in which the property is located, which saves the cost

of a lease-extension payment. By drilling a limited number of wells in each unit, as opposed to drilling all wells capable of being drilled in a sequential and timely manner, companies like Antero avoid paying renewal payments. This practice of parent child development as opposed to combo development, comes at the expense of the royalty owners whose gas reserves are wasted and diminished.

6. Here, Plaintiffs and class members are those with royalty interests in parent wells, operated by Defendant Antero, where Antero has drilled and commenced operation of child wells long after the parent wells have been producing gas. Antero's indefensible corporate drilling practices have diminished Plaintiffs' royalty payments by approximately 10-15%, amounting to millions of dollars in lost royalties. Antero's practices constitute negligent waste of the Plaintiffs' gas resources, nuisance, and breach the implied covenants of reasonable development Antero owes each Plaintiff and class member.

7. Plaintiffs therefore bring this action to recover lost royalty payments, both for themselves and for a class of royalty owners across West Virginia, caused by Antero's corporate drilling practices.

**Parties**

8. Plaintiff Carolyn Seckman is a citizen and resident of New Martinsville, West Virginia. She is a mineral owner and unit participant in the Antero well described below.

9. Plaintiffs Charles and Gail Anderson, husband and wife, are citizens and residents of Easton, Pennsylvania. They are mineral owners and unit participants in the Antero well described below.

10. Plaintiffs William C. and Kimberly VanCampen, husband and wife, are citizens and residents of Williamsport, Pennsylvania. They are mineral owners and unit participants in the Antero well described below.

11. Defendant Antero Resources Corporation is a Delaware corporation, with a principal place of business in Denver, Colorado.

## Jurisdiction and Venue

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this case, exclusive of interest and costs, involves claims in excess of $5 million in damages and is a class action in which Plaintiffs and class members are citizens of states different than Defendant.

13. This Court has personal jurisdiction over Defendant because it is authorized to do business and conducts business in West Virginia, has sufficient minimum contacts with West Virginia, and has sufficiently availed itself of West Virginia law and markets, thereby rendering the exercise of personal jurisdiction by this Court permissible.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because this case arose in this District, the real property at issue is situated here, and Defendant's unlawful conduct occurred here.

15. Venue is also proper because Defendant (a) is authorized to conduct business in this district and has intentionally availed itself to the laws and markets within this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

**Factual Basis for the Claims**

16. Plaintiff Carolyn Seckman is a mineral owner and unit participant in the Weigle Unit, Well 1H, API No. 47-095-02126 (the "Weigle Unit Parent Well"), a horizontal shale gas well operated by Defendant and located in Tyler County, West Virginia.

17. On or around May 18, 2014, Antero completed the Weigle Unit Parent Well indicated in red below; on or around September 3, 2018, completed a child well (the "Dean Unit Child Well," API No. 47-095-02346), shown in blue:



5

18.     Plaintiffs Charles and Gail Anderson and William C. and Kimberly VanCampen are mineral owners and unit participants in the Franklin P. Quimby Well, Myrtle Unit 2H, API No. 47-085-10082 (the "Myrtle Unit Parent Well"), a horizontal shale gas well operated by Defendant.

19.     On or around February 24, 2015, Antero completed the Myrtle Unit Parent Well indicated in red below; on or around September 4, 2016, on a separate property on which the Plaintiffs Charles and Gail Anderson and William C. and Kimberly VanCampen have minimal ownership interest, completed a child well (the "Caldwell Unit Child Well," API No. 47-085-10154), shown in blue:



20. Shale reservoirs such as those depicted in the map above produce natural gas on a continuous hyperbolic decline trajectory — i.e., an expected rate of decline in production, amenable to forecasting — *unless* affected by external forces. These forces typically consist of changes in surface operating conditions, or reservoir impacts from adjacent well development activities.

21. Here, the Weigle Unit Parent well was impacted by an external force that sharply reduced its production trajectory: Antero's drilling and completion of the adjacent Dean Unit child well.

22. The chart below depicts the impact of the completion of the Dean Unit Child Well had on the expected production trajectory of the Weigle Unit Parent well. The red line shows the actual production trajectory as impacted by Defendant's drilling of the child well, why the gray dotted line shows the expected trajectory, free of this external force:



23. Here, the Myrtle Unit Parent Well was impacted by an external force that sharply reduced its production trajectory: Antero's drilling and completion of the adjacent Caldwell Unit Child Well.

24. The damages demonstrated by the gap between the red line (the actual production impacted by the completion of the child well) and the gray dotted line (the expected production had the defendant not impacted the parent well by the drilling of the child well) are significant. The value of the lost production from the completion of the child well through December 31, 2022 exceed $600,000.

25. The chart below depicts the impact the completion of the Caldwell Unit Child Well had on the expected production trajectory of the Myrtle Unit Parent Well. The red line shows the actual production trajectory as impacted by Defendant's drilling of the child well, while the gray dotted line shows the expected trajectory, free of this external force:



26. The damages demonstrated by the gap between the red line (the actual production, as impacted by the child well) and the gray dotted line (the expected production had Defendant not harmed production by drilling the child well) are significant. The reduced production of the Myrtle Unit Parent Well from the date the child well was completed through December 31, 2020 resulted in lost royalties exceeding $750,000.

### Class Action Allegations

27. Plaintiffs bring this action individually and under Federal Rule of Civil Procedure 23(b)(3) on behalf of themselves and the following class (the "Class"):

> All persons or entities that own or owned an interest in natural gas subject to a pooling unit (or "production unit") associated with the following gas wells ("Class Wells") located in West Virginia:
>
> a. 4701706085
> b. 4701706141
> c. 4701706166
> d. 4701706170
> e. 4701706201
> f. 4701706272
> g. 4701706278
> h. 4701706358
> i. 4701706395
> j. 4701706422
> k. 4701706621
> l. 4701706727
> m. 4703305582
> n. 4708509963
> o. 4708510082
> p. 4708510106
> q. 4708510164
> r. 4709502126
> s. 4709502157
> t. 4709502159

28. Excluded from the Class is Defendant; any entities in which Defendant has a controlling interest; Defendant's agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

29. Members of the Class are ascertainable through Defendant's records as well as public records.

30. Numerosity is satisfied because there are hundreds if not thousands of class members such that joinder of all potential class members is impractical.

31. Plaintiffs' claims are typical of class members' claims because Antero's operations were completed in the same negligent and reckless manner, and because they all sustained damages caused by Defendant's practices.

32. Common factual and legal questions exist among Plaintiffs and class members. These common questions predominate over questions that might affect only individual class members' claims and generate common answers including:

   a. Whether the Class Wells were damaged by Defendant's parent-child well drilling and completion practices;

   b. Whether Defendant negligently committed waste as alleged in Count One;

   c. Whether Defendant breached the implied covenant of reasonable development with respect to the Class Wells; and

   d. Whether Defendant's well-drilling and completion practices amount to a private nuisance.

33. Absent a class action, most class members will find the cost of litigating their claims prohibitive and will have no effective remedy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation, particularly as to liability because a class action conserves the courts' resources and promotes consistent and efficient adjudication.

34. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, particularly in the field of oil and gas.

35. The difficulties in management of this case as a class action are outweighed by the benefits of disposing of common issues of law and fact as to the large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action due to the number of cases filed, pending, or to be filed.

36. As a direct and proximate result of the conduct and actions of Defendant, as set forth herein, Plaintiffs and all class members have sustained damages, losses, costs, and expenses including attorney fees, and are all entitled to relief as more fully set forth and requested below.

## Legal Claims

### Count One – Negligent Waste of Gas

37. In the course of planning, designing and operating natural gas wells adjacent to those wells in which Plaintiffs and class members have an interest, Defendant has a duty to use reasonable care to avoid the negligent waste or destruction of the gas imbedded in the Plaintiffs' and class members' neighboring gas-bearing strata. *Eliff v. Texon Drilling Co.,* 146 Tex. 575, 584 (Tex. 1948); *Atkinson v. Virginia Oil & Gas Co.*, 72 W. Va. 707, 79 S.E. 647, 648 (1913); *Hague v. Wheeler,* 157 Pa. 324, 341 (Pa. 1893).

38. By drilling and completing child wells adjacent to the parent wells in which Plaintiffs and class members have an interest, as described above, Defendant breached this duty with respect to Plaintiffs and class members.

39. Defendant's conduct in drilling child wells reduced the production of Plaintiffs' and class members' wells, thus causing harm to Plaintiffs and class members.

40. Plaintiffs and class members are entitled to compensatory damages from Defendant in amounts sufficient to remedy the injuries caused by Defendant's negligence.

### Count Two – Breach of the Implied Covenant of Reasonable Development

41. As a lessee undertaking to develop gas reserves, Defendant covenants to Plaintiffs and class members to exercise reasonable diligence in extracting all oil and gas contained within Plaintiffs' and class members' lands, for the mutual benefit of both lessee and lessor. *Grass v. Big Creek Dev. Co.*, 84 S.E. 750, 751 (W. Va. 1915); *see also Jennings v. Southern Carbon Co.*, 73 W. Va. 215 (1913).

42. By drilling a child well on adjacent property in the manner described above, thereby reducing the production of the wells in which Plaintiffs' and class members have an interest, Defendant breached this duty under Plaintiffs' and class members' leases with Defendant, thereby causing Plaintiffs and class members to suffer damages.

43. Plaintiffs and class members are entitled to compensatory damages from Defendant in amounts sufficient to remedy the injuries caused by its breach of the implied covenants contained in Plaintiffs' and class members' lease agreements.

### Count Three – Private Nuisance

44. Plaintiffs and class members have the right to enjoy their property, including the properties' production of natural gas, free from substantial and unreasonable harm to and interference with those rights. *See Atkinson v. Virginia Oil & Gas Co.*, 79 S.E. 647, 648 (W. Va. 1913); *Hendricks v. Stalnaker*, 380 S.E.2d 198, 200 (W. Va. 1989).

45. By drilling child wells on adjacent property in the manner described above, thereby reducing the production of the wells in which Plaintiffs' and class members have an interest,

Defendant substantially and unreasonably interfere with Plaintiffs' and class members' property rights. Syl. Pt. 1, *Hendricks v. Stalnaker*, 380 S.E.2d 198, 200 (W. Va. 1989).

46. The gravity of the harm to Plaintiffs and class members outweighs the social value of Defendant's drilling of child wells on adjacent properties. *Id.* Syl. Pt. 2. Defendant's drilling and completion of child wells in close proximity to parent wells, as described above, is inefficient, wasteful, and harmful to Plaintiffs.

47. Defendant's acts and omissions injure and will continue to injure Plaintiffs and class members. Such acts and omissions occur on the Plaintiffs' private real properties and therefore injure the Plaintiffs directly, uniquely, and specially.

48. Plaintiffs are entitled to a declaration that Defendant's drilling of child wells constitutes a nuisance, and to compensatory damages in an amount sufficient to remedy such nuisance.

**Relief Sought**

49. Plaintiffs seek the following relief:

   a. Certification of the proposed class described above pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4), with Plaintiffs to serve as class representatives and the undersigned counsel to serve as class counsel;

   b. Judgment against Defendant on all claims, and in such amounts as will fully and adequately compensate Plaintiffs and class members for their damages;

   c. Pre- and post-judgment interest;

   d. Expenses of litigation, including reasonable attorneys' fees; and

   e. Any other relief the Court deems appropriate.

## Jury Demand

Plaintiffs demand a trial by jury on all claims so triable.

Dated: April 10th, 2023

Respectfully submitted,

_____
Brian R. Swiger, Esq. (WVSB No. 5872)
John W. Barrett, Esq. (WVSB No. 7289)
Jeffrey E. Parsons, Esq. (WVSB No. 10678)
Benjamin J. Hogan, Esq. (WVSB No. 12997)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
bswiger@baileyglasser.com
jbarrett@baileyglasser.com
jparsons@baileyglasser.com
bhogan@baileyglasser.com
*Attorneys for Plaintiffs and Proposed Class*